UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

MEDMARC CASUALTY INSURANCE
COMPANY,

        Plaintiff,

                                    CASE NO.

vs.

ROY WATSON, ESQ., ADAMS |
COOGLER, P.A., and INDIAN RIVER
MEMORIAL HOSPITAL, INC., d/b/a
CLEVELAND CLINIC INDIAN
RIVER HOSPITAL,

        Defendants.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Medmarc Casualty Insurance Company ("Medmarc"), files its

Complaint for Declaratory Judgment against Defendants Roy Watson, Esq.

("Watson"), Adams/Coogler, P.A.[1] ("Adams | Coogler"), and Indian River

Memorial Hospital, Inc., d/b/a Cleveland Clinic Indian River Hospital

("IRMH"), and alleges:

---

[1] The Florida Department of State, Division of Corporations' website identifies "Adams/Coogler, P.A." as an active Florida Profit Corporation. Upon information and belief, Adams/Coogler, P.A. identifies itself on its website and letterhead as "Adams | Coogler" and/or "Adams | Coogler, P.A.". The Named Insured identified on Medmarc Policy No.: 19MCFL000653 for the policy period of September 28, 2019 to September 28, 2020 is "Adams/ Coogler, P.A." The Named Insured identified on Medmarc Policy No.: 20MCFL000617 for the 09/28/2020 to 09/28/2021 policy period is "Adams/ Coogler, P.A." Hereinafter, Medmarc refers to "Adams/Coogler, P.A." and all variations of the same as "Adams | Coogler."

## NATURE OF ACTION

1.     Medmarc seeks declaratory relief, pursuant to 28 U.S.C. §§ 2201 and 2202, regarding its rights, duties, and obligations under professional liability insurance policies (the "Medmarc Policies", as referenced further below) it issued to Adams | Coogler with respect to alleged negligently performed professional services in an underlying medical malpractice claim and lawsuit (the "Underlying Malpractice Claim").

2.     Watson and Adams | Coogler sought coverage for the Underlying Malpractice Claim from Medmarc.

3.     Medmarc maintains that it has no obligation to defend Watson or Adams | Coogler or to indemnify them (or any other person or entity) for their potential liability for the Underlying Malpractice Claim.

4.     This action seeks to resolve an actual controversy among and between the parties regarding insurance coverage for the Underlying Malpractice Claim under the policies described below.

## THE PARTIES

5.     Medmarc is a Vermont Corporation with its principal place of business in Virginia.

6.     Adams | Coogler is Florida corporation with its principal place of business in Florida.

7.     Watson is domiciled in and a citizen of Florida.

8.     IRMH is a Florida corporation with its principal place of business in Florida.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff is a citizen of different states than the Defendants and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

10.     Venue lies proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because one or more Defendants reside or maintain a principal place of business in this District.

11.     Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Watson and Adams | Coogler's disputed claim for coverage occurred in this District.

12.     All conditions precedent to the filing of this action have occurred or have been complied with.

13.     Pursuant to the requirements of 28 U.S.C. § 2201 and 2202 and Article III, Section 2 of the United States Constitution, this Court has the power to declare and adjudicate the rights and liabilities, if any, of the parties under the Medmarc Policies, and to give such other and further relief as may be necessary to enforce the same because an actual justiciable controversy

1061138\315350171.v1

exists between and among the parties that can be determined by an order of this Court.

## FACTUAL BACKGROUND

### *The Alleged Medical Malpractice Incident*

14.    In or around June 2017, a patient underwent an abdominal hysterectomy at IRMH. It is alleged that as a result of purported negligence by IRMH staff and an anesthesiologist, the patient suffered significant injuries and remains in a vegetative state.

### *The Medical Malpractice Claim and Pre-Suit Activity*

15.    Following the incident described in the foregoing paragraph, IRMH placed its medical malpractice carrier on notice, and counsel was retained to assist in the evaluation of a potential claim. In November or December 2017, IRMH also retained Watson and Adams | Coogler to assist in the investigation of the incident, and plan defenses to a potential lawsuit brought against IRMH. Watson was assigned primary responsibility for compliance with the statutory pre-suit requirements and proceedings.

16.    The patient's guardian; husband; and five children, which included two minor children (collectively, "Underlying Medical Malpractice Plaintiffs") retained an attorney to represent their interests with respect to claims, pre-suit negotiations, and potential litigation against IRMH.

1061138\315350171.v1

17.    On January 23, 2018, Underlying Medical Malpractice Plaintiffs submitted a notice of intent to initiate a complaint for medical negligence against IRMH pursuant to Fla. Stat. § 766.106 (the "Notice").

18.    The Notice was accompanied by discovery requests pursuant to Fla. Stat. § 766.106(6)(a) (the "Pre-suit Discovery Requests"), which provides that "the parties shall make discoverable information available without formal discovery. Failure to do so is grounds for dismissal of claims or defenses ultimately asserted."

19.    IRMH did not issue responses to the Pre-suit Discovery Requests.

20.    Under Fla. Stat. § 766.106, issuance of a notice of intent to litigate begins a 90-day period before a claimant can bring suit. At or before the end of the 90 days, a prospective defendant or its insurer shall reject the claim, make a settlement offer, or admit liability and offer to arbitrate the issue of damages. Fla. Stat. § 766.106(3)(b). Should the claimant agree to voluntary binding arbitration of the medical negligence claim, noneconomic damages are limited to $250,000. Fla. Stat. § 766.207(b). Should the claimant reject arbitration, it may proceed to litigation, but noneconomic damages are limited to $350,000. Fla. Stat. 766.209(4)(a). These limitations are referred to herein as the "Damage Caps."

21.    On April 23, 2018, Watson purportedly attempted to issue an offer to arbitrate to Underlying Medical Malpractice Plaintiffs' counsel which was

allegedly lost by the United States Postal Service. Watson then issued another arbitration offer to Underlying Medical Malpractice Plaintiffs' counsel on April 24, 2018.

22.     Underlying Medical Malpractice Plaintiffs' counsel rejected the arbitration offer. In rejecting the arbitration offer, Underlying Medical Malpractice Plaintiffs' counsel argued that Watson's arbitration offer was untimely pursuant to Fla. Stat. § 766.207; IRMH failed to participate in good faith in the pre-suit process due to IRMH's failure to respond to the Pre-suit Discovery Requests accompanying the Notice; and the Damage Caps were unconstitutional.

### *The Medical Malpractice Lawsuit*

23.     On or about May 14, 2018, Underlying Medical Malpractice Plaintiffs filed a medical malpractice lawsuit against IRMH as well as the anesthesia group and anesthesiologist involved in the patient's procedure.

24.     On July 9, 2018, IRMH filed its answer to the complaint. The answer was accompanied by numerous affirmative defenses. Relevant to the immediate dispute, affirmative defenses one, two, and five pertained to and sought protection under the Damage Caps.

25.     On January 28, 2019, Underlying Medical Malpractice Plaintiffs filed a Motion for Partial Summary Judgment (the "MPSJ") or Alternatively, Motion to Strike Affirmative Defenses One, Two, and Five (the "January

Motion to Strike") (collectively, the "January Motions"). Therein, Underlying Medical Malpractice Plaintiffs argued that IRMH should not be allowed to invoke the Damage Caps because, among other things: (1) the arbitration offer was untimely; and (2) IRMH failed to respond to the Pre-suit Discovery Requests. (Exhibit 1.)

26.     In addition to these arguments, on January 28, 2019, Underlying Medical Malpractice Plaintiffs also filed two Motions to Compel IMRH to produce certain unedited security video and complete responses to Underlying Medical Malpractice Plaintiffs' Second Request for Production (the "Motions to Compel"). (Exhibits 2 and 3.)

27.     Throughout the pendency of these motions, Watson communicated his concerns with co-counsel and IRMH's general counsel, as set forth below. Notably, Adams | Coogler shareholder, Reed Kellner ("Kellner"), was a party to many of these communications and a participant in the litigation.

28.     While evaluating the January Motions and preparing a response thereto, Watson acknowledged that the Underlying Medical Malpractice Plaintiffs sought to strike the Damage Caps because Watson had failed to respond to the Pre-Suit Discovery Requests and had not timely submitted the demand for arbitration.

29.     On April 1, 2019, the court held a hearing on the Underlying Medical Malpractice Plaintiffs' Motions to Compel. Pursuant to orders dated

April 11, 2019, IRMH agreed to produce unedited video footage from the date of the surgery and and was ordered to supplement its responses to Underlying Medical Malpractice Plaintiffs' Second Request for Production. (Exhibits 4 and 5.)

30.     Thereafter, Watson communicated concerns to IRMH and co-counsel regarding Underlying Medical Malpractice Plaintiffs' allegations of Watson's pre-suit misconduct and allegations of prejudice.

31.     On May 30, 2019, Underlying Medical Malpractice Plaintiffs filed a standalone Amended Motion to Strike and for Sanctions (the "May Motion to Strike and for Sanctions") which reiterated that "[d]espite failing to comply with its *obligations* under Chapter 766, Florida Statutes, IRM[H] seeks to invoke the *benefits* of Chapter 766, Florida Statutes to impose a gross restriction on Plaintiffs' ability to recover non-economic damages for the permanent, severe, and disabling harm IRM[H]'s negligence inflicted upon [the patient]." (Exhibit 6, at 18.) (Emphasis in original.) Moreover, the May Motion to Strike and for Sanctions alleged further discovery malfeasance by alleging that IRMH's "recalcitrance persisted and intensified" after litigation began, and contended Watson breached mediation confidentiality. (Exhibit 6, at 4.)

32.     While the January Motions and May Motion to Strike and for Sanctions remained pending, Watson filed a notice to withdraw as counsel for

IRMH on August 20, 2019. (Exhibit 7.) However, Watson remained apprised of litigation developments following his withdrawal, as discussed further herein.

33.    On September 11, 2022, Underlying Medical Malpractice Plaintiffs filed a Suggestion of Noncompliance with Court Order, Motion to Compel, and Motion for Sanctions, alleging that IRMH had failed to comply with the Court's April 11, 2019 orders regarding certain production ("Noncompliance Suggestion"). (Exhibit 8.)

34.    On February 4, 2020, the court held an evidentiary hearing on the January Motions and the May Motion to Strike and for Sanctions, from which Watson was excluded since he was a potential witness. However, in advance of the hearing, Watson voiced concerns regarding the merits of the January Motions.

35.    On March 5, 2020, the court denied the January Motions but granted, in part, the May Motion to Strike and for Sanctions. (Exhibits 9 and 10.) In doing so, the court made a number of factual findings in its Order on the May Motion to Strike and for Sanctions. Therein, the court summarized various instances in which IRMH failed to participate in discovery prior to and during the underlying lawsuit and found that Watson had made numerous statements regarding available documentation that were false. (Exhibit 10, ¶¶ 18, 21, 29, 32, 34, 37, 39.) The court also summarized "Other Litigation Misconduct" by IRMH and its counsel (*see* Exhibit 10, ¶¶ 56-62) and included

9

a section entitled "Bad Faith." In the "Bad Faith" section, the court found that IRMH had violated court orders compelling production of documentation and that:

> IRM[H] ha[d] at least eight times misrepresented to [Underlying Medical Malpractice] Plaintiffs or to the Court (or to both) the extent of responsive adverse incident discovery. Counsel for IRM[H] misrepresented the existence or scope of adverse medical incident documents in (1) an October 23, 2018 email, (2) a January 7, 2019 letter, (3) a January 15, 2019 response to requests for production, (4) a March 28, 2019 email, (5) a second March 28, 2019 email, (6) a June 7, 2019 privilege log, (7) an October 14, 2019 hearing, and (8) a January 22, 2020 hearing.

(Exhibit 10, ¶ 66.) The court found that such conduct constituted a "willful disregard, gross indifference, or deliberate callousness" to the court's orders and that the Underlying Medical malpractice Plaintiffs had suffered significant prejudice as a result. (Exhibit 10, ¶¶ 68-69.)

36.    The Court also entered an order on Underlying Medical Malpractice Plaintiffs' Noncompliance Suggestion. (Exhibit 11.) Therein, the Court held that IRMH had failed to comply with the Court's April 11, 2019 order requiring production of all Amendment 7 documentation; mischaracterized as nonresponsive certain responsive documentation that should have been produced; and improperly redacted certain documentation prior to production. As such, the Court granted Underlying Medical Malpractice Plaintiffs' Motion to Compel and reserved ruling on the Motion for Sanctions.

10

37.     Copies of the foregoing Orders (the "March Orders") detailing the alleged malfeasance were sent to Watson on March 6, 2020.

38.     Following the court's March Orders, Underlying Medical Malpractice Plaintiffs filed a Motion to Set the Remedy on May 18, 2020, and an Amended Motion to Set the Remedy on July 23, 2020. Therein, Underlying Medical Malpractice Plaintiffs sought a court order setting a remedy for IRMH's purported pre-suit and in-suit misconduct. (Exhibits 12 and 13.) IRMH filed a Response in Opposition on August 4, 2020.

39.     On August 26, 2020, the court entered an Order on Underlying Medical Malpractice Plaintiffs' Amended Motion to Set the Remedy. (Exhibit 14.) After reiterating the various alleged failures and misconduct of IRMH's counsel both pre-suit and in-suit, the court found that:

> [b]y thwarting [Underlying Medical Malpractice] Plaintiffs' investigation and discovery in violation of the [Medical Malpractice] Act, IRM[H] in fact 'prejudiced [Underlying Medical Malpractice] Plaintiffs' ability to make an informed decision' with respect to the very benefits IRM[H] sought to invoke under the Act. Accordingly, IRM[H] should be estopped to invoke the benefits of the Medical Malpractice Act when it failed to discharge the Act's burdens.

(Exhibit 14, ¶ 15.) Alternatively, the court held it would otherwise preclude IRMH from establishing or supporting the Damage Cap affirmative defenses, or impose a civil fine against IRMH in the amount of Underlying Medical

11

Malpractice Plaintiffs' full, uncapped damages in claims that could have been brought but for the misconduct of IRMH. (Exhibit 14, ¶¶ 18, 23.)

40.     Due to the court's orders and other purported Adams | Coogler misconduct, IRMH was allegedly compelled to settle with Underlying Medical Malpractice Plaintiffs without the benefit of the Damage Caps.

41.     Upon information and belief, IRMH possess all rights of recovery with respect to the settlement entered into with Underlying Medical Malpractice Plaintiffs.

### *The Legal Malpractice Claim*

42.     In January 2021, IRMH made a legal malpractice claim against Adams | Coogler based on the foregoing purported misconduct by Adams | Coogler (the "Legal Malpractice Claim").

43.     Following the settlement, IRMH's medical malpractice carrier, Admiral Insurance Company ("Admiral"), also filed a declaratory action in the Court for the Southern District of Florida on February 4, 2023. Therein, Admiral sought a declaration that coverage was not owed to IRMH because the amounts sought were sanctions and punitive damages resulting from purported legal misconduct.

44.     On or about February 5, 2021, Adams | Coogler's broker attempted to send notice of the Legal Malpractice Claim to Medmarc, but

issued notice to an incorrect email address. Medmarc first received notice of the Legal Malpractice Claim on or about February 11, 2021.

45.     Following notice of the Legal Malpractice Claim, under a reservation of rights, Medmarc agreed to pay for counsel selected by Adams | Coogler to investigate the Legal Malpractice Claim and defend Watson and Adams | Coogler.

46.     Over the next approximately two and a half years, counsel selected by Adams | Coogler and funded by Medmarc under a reservation of rights has continued to defend against and investigate the Legal Malpractice Claim.

### *The Medmarc Policies*

47.     During the foregoing events, Medmarc issued consecutive professional liability policies to Adams | Coogler. In relevant part, Medmarc issued: (1) a "LawyerCare® Professional Liability Policy for Lawyers and Law Firms Claims-Made Form" to "Adams/ Coogler, P.A." bearing policy number 19MCFL000653 for the policy period of September 28, 2019 to September 28, 2020 (the "2019-2020 Policy"); and (2) a "LawyerCare® Professional Liability Policy for Lawyers and Law Firms Claims-Made Form" to "Adams/ Coogler, P.A." bearing policy number 20MCFL000617 for the policy period of September 28, 2020 to September 28, 2021 (the "2020-2021 Policy") (collectively, the "Medmarc Policies"). Copies of the Medmarc Policies are attached hereto as Exhibits 15 and 16.

1061138\315350171.v1

## *The Application for the 2020-2021 Policy*

48.   On or about September 3, 2020, Adams | Coogler's insurance broker submitted a "Lawyers Professional Liability Insurance Application" to Medmarc that had been completed by Kellner on or about September 1, 2020. (Exhibit 17.)

49.   In relevant part, question 4.B.iii. of the application asked the following:

> During the past five years, has any lawyer listed in Question 1.F., or on the Larger Firm Supplement . . . become aware of any act, error, omission or specific circumstances which could reasonably be expected to result in a professional liability claim against the firm, any past or present lawyers in the firm, or any predecessor firm?

50.   The response to Question 1.F. of the application directed the reader to an attached list of attorneys that included Watson and Kellner.

51.   In response to question 4.B.iii., Kellner, on behalf of Adams | Coogler, selected "No."

## *Relevant Terms of the Medmarc Policies*

52.   In relevant part, the Medmarc Policies provide coverage as follows:

**2.1.1.** The **Company**[2] will pay on behalf of the **Insured** all sums up to the Limit of Liability shown in Item 4 of the Declarations and in excess of the Deductible amount shown in Item 5 of the Declarations that the **Insured** shall become legally obligated to pay as **damages** because of any **claim** or **claims**, including

---

[2]   Bolded terms herein denote terms or phrases defined by the Medmarc Policies.

14

**claim(s)** for **personal injury**, first made against the **Insured** and first reported to the **Company** during the **policy period**, involving any act, error, or omission in rendering or failing to render **professional services** by the **Insured** or by any person for whose acts, errors, or omissions the **Insured** is legally responsible, provided that the act, error, or omission first occurred on or after the **Retroactive Date** and that no **Insured** knew or should have known of facts that reasonably could have been expected to result in a **claim** prior to the effective date of this **policy**.

**2.1.2.** An act, error, or omission that is continuing in nature shall be deemed to have occurred only on the date on which that act, error, or omission or series of related acts, errors, or omissions began and not on any subsequent date. Related acts, errors, or omissions shall be deemed to have occurred on the date that the earliest of such acts, errors, or omissions began.

(Exhibit 16, at 7.)

53.     Pursuant to the Medmarc Policies' definitions, (1) **Company** means Medmarc; (2) **Insured** means, in relevant part, Adams | Coogler and any lawyer thereof solely while acting in a professional capacity on behalf Adams | Coogler; (3) **professional services** include "services rendered by an **Insured** as a provider of legal services in a lawyer-client relationship"; (4) **claim** means a demand or suit for **damages** received by the **Insured**; and (5) **damages** include monetary judgments, awards, or settlements (not including certain enumerated exceptions). (Exhibit 16, at 6-7.)

### _Watson & Adams | Coogler Seek Coverage Under The Medmarc Policies_

15

54.     On February 5, 2021, Adams | Coogler's insurance broker attempted to provide notice of the Legal Malpractice Claim to Medmarc. Medmarc received notice on February 11, 2021.

55.     Neither Adams | Coogler nor Watson advised Medmarc of any of the foregoing circumstances or of the Legal Malpractice Claim prior to February 5, 2021 at any time, or specifically during the application process for the 2020-2021 Policy.

56.     As of the date of this complaint, counsel selected by Adams | Coogler and funded by Medmarc under a reservation of rights has continued to defend against and investigate the Legal Malpractice Claim.

<u>**COUNT I**</u>

<u>**DECLARATORY JUDGMENT**</u>
<u>**(NO COVERAGE UNDER THE 2019-2020 POLICY)**</u>

57.     Medmarc incorporates paragraphs 1 through 56 as if fully stated herein.

58.     The 2019-2020 Policy only applies to claims first made against the Insured and *first reported to Medmarc* during the policy period. The 2019-2020 Policy has a policy period of September 28, 2019 to September 28, 2020.

59.     The 2019-2020 Policy provides when a claim is first reported to Medmarc as follows:

A **claim** is first reported to the **Company** at the earlier of the following:

1061138\315350171.v1

a)   when the **Company** first receives notice from the **Insured** that a **claim** has been made; or

b)   when the **Company** first receives notice from the **Insured** of the specific circumstances involving a particular person or entity that could reasonably be expected to result in a **claim**.

Any **claim** involving the same, related, or continuing **professional services** that resulted in a **claim** prior to the first policy issued to the **Named Insured** by the **Company**, whether or not the **claim** was reported to any prior insurer, is not covered under this **policy**.

(Exhibit 15, at 12.)

60.   Neither Watson nor Adams | Coogler provided notice of the Underlying Malpractice Claim or of any specific circumstances involving a particular person or entity that could have reasonably been expected to result in a claim during the policy period for the 2019-2020 Policy. Accordingly, there is no coverage under the 2019-2020 for the Underlying Malpractice Claim.

## COUNT II

## DECLARATORY JUDGMENT – THERE IS NO COVERAGE UNDER THE 2020-2021 POLICY FOR THE UNDERLYING CLAIM

61.   Medmarc incorporates paragraphs 1 through 60 as if fully stated herein.

62.   The 2020-2021 Policy only applies to claims first made against the Insured and first reported to Medmarc during the policy period. The 2020-2021 Policy has a policy period of September 28, 2020 to September 28, 2021.

63.     In relevant part, the 2020-2021 Policy affords coverage for sums the Insured legally becomes obligated to pay as damages because of claims involving acts, errors, or omissions in the rendering of or failure to render professional services, "provided that the act, error, or omission first occurred on or after the **Retroactive Date** and that no **Insured** knew or should have known of facts that reasonably could have been expected to result in a **claim** prior to the effective date of this **policy**." (Exhibit 16, at 7.)

64.     Prior to the effective date of the 2020-2021 Policy (i.e., September 28, 2020), Underlying Medical Malpractice Plaintiffs had filed motions to strike the Damages Caps on the basis of Watson's and Adams | Coogler's discovery misconduct and the underlying court had found Watson and Adams | Coogler mishandled and made misrepresentations regarding discovery. Furthermore, the Damages Caps had actually been stricken by the underlying court in August 2020 on the basis that IRMH had failed to comply with pre-suit discovery.

65.     As such, the Insureds knew or should have known of facts that reasonably could have been expected to result in a claim prior to the effective date of the 2020-2021 Policy.

66.     Accordingly, the Legal Malpractice Claim arising from the Underlying Malpractice Claim fails to satisfy the explicit language of the 2020-2021 Policy's insuring agreement in Section 2.1.1.

1061138\315350171.v1

67.     Relatedly, the 2020-2021 Policy provides that a claim is first made as follows:

> A **claim** is first made against the **Insured** at the earlier of the following:
>
> a)      when the **Insured** first receives written notice that a **claim** has been made; or
>
> b)      when the **Insured** first receives information of specific circumstances involving a particular person or entity that could reasonably be expected to result in a **claim** (however, this paragraph does not apply during the Limited Automatic Reporting Period provided in Section 6.1).
>
> All **claims**, including **claims** for **personal injury**, involving a single act, error, or omission or a series of related acts, errors, or omissions shall be deemed to be one **claim** and to be first made when the first of such **claims** is made.

(Exhibit 16, at 7-8.)

68.     As demonstrated above, Watson and Adams | Coogler knew of specific circumstances involving Watson and the firm's handling of the Underlying Malpractice Claim that could have reasonably been expected to result in a claim as early as January 2019 (when Underlying Malpractice Plaintiffs filed motions to strike the Damages Caps due to Watson's discovery misconduct) but no later than March 2020 when the Insureds received the March Orders entered in the underlying lawsuit wherein the court outlined the various ways in which Watson and Adams | Coogler had mishandled and made misrepresentations regarding discovery.

19

69.     Therefore, any potential claim brought in connection with this matter was made before the policy period of the 2020-2021 Policy and therefore does not comply with the claims-made requirement found in Section 2.1.1.

70.     Based on the foregoing, any claim in connection with the Underlying Malpractice Claim, including the Legal Malpractice Claim, fails to comply with the express conditions set forth in the 2020-2021 Policy. As such, there is no coverage under the 2020-2021 Policy for the Legal Malpractice Claim.

71.     An actual, present, and justiciable controversy exists between Medmarc and one or more of the Defendants regarding this issue that warrants the entry of a declaratory judgment by this Court.

## COUNT III

## DECLARATORY JUDGMENT – MEDMARC IS ENTITLED TO DENY COVERAGE UNDER OR RESCIND THE 2020-2021 POLICY PURSUANT TO FLA. STAT. § 627.409

72.     Medmarc incorporates paragraphs 1 through 71 as if fully stated herein.

73.     In the alternative to Count II, Medmarc seeks a declaration that it is entitled to deny coverage under or rescind the 2020-2021 Policy void *ab initio* pursuant to Fla. Stat. § 627.409, which provides, in relevant part:

> (1) Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a

20

representation and not a warranty. Except as provided in subsection (3), a misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply:

>    (a) The misrepresentation, omission, concealment, or statement is fraudulent or is material to the acceptance of the risk or to the hazard assumed by the insurer.
>
>    (b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

74.    To obtain coverage through issuance of the 2020-2021 Policy, on or about September 3, 2020, Adams | Coogler's insurance broker submitted an application for coverage completed by Kellner.

75.    In relevant part, Kellner selected "No" in response to an application question asking whether, during the past five years, any attorney on an enumerated list become aware of any act, error, omission, or specific circumstances which could reasonably be expected to result in a professional liability claim against the firm, any past or present lawyers in the firm, or any predecessor firm. (Exhibit 17, at 3.)

76.    Watson and Kellner were attorneys on the enumerated list. (Exhibit 17, at 6.)

1061138\315350171.v1

77.     The 2020-2021 Policy was issued in reliance upon the truth of the representations made in the application.   The 2020-2021 Policy states in Section 8.2., entitled Application and Duty to Supplement, that:

> This **policy** has been issued in reliance upon all information and representations made by the **Insureds** and submitted to the **Company** in connection with the application.   By acceptance of this **policy**, the **Named Insured** agrees that:
>
> a)   the statements made in the application are personal representations of all **Insureds** for the purposes of inducing the **Company** to issue this **policy**, and the representations were true when made and remained true through such time this **policy** was issued;
>
> b)   this **policy** has been issued in reliance upon the truth of such representations; . . . .

(Exhibit 16, at 16.)

78.     As set forth in Count II, both Watson and Kellner were aware of facts or should have been aware of facts that could have reasonably been expected to result in a claim prior to Kellner's completion of the application. Prior to September 1, 2020, Kellner was involved in various portions of the underlying litigation and was aware of concerns regarding the Pre-Suit Discovery Requests and the Damages Caps.

79.     Accordingly, the "No" response given by Adams | Coogler to the above-referenced application question was a material misrepresentation. Medmarc relied on such material misrepresentation when it issued the 2020-2021 Policy.   Moreover, had Medmarc known of the above-described

circumstances, it would not have issued the 2020-2021 Policy pursuant to the same premium rate, terms, or limits, or would not have covered the same risks.

80.    Accordingly, Medmarc is entitled to deny coverage under the 2020-2021 Policy for the Legal Malpractice Claim pursuant to Fla. Stat. § 627.409, or rescind the 2020-2021 Policy void *ab initio* pursuant to  Fla. Stat. § 627.409.

**WHEREFORE**, Medmarc requests a judgment in its favor against Watson, Adams | Coogler, and IRMH on all Counts of Medmarc's Complaint for Declaratory Relief, including the following relief:

a.    a declaration that the 2019-2020 Policy does not provide coverage for Watson or Adams | Coogler in connection with the Legal Malpractice Claim;

b.    a declaration that the 2020-2021 Policy does not provide coverage for Watson or Adams | Coogler in connection with the Legal Malpractice Claim or, in the alternative, is void;

c.    a declaration that Medmarc has no duty under the 2019-2020 Policy to defend Watson or Adams | Coogler in connection with the Legal Malpractice Claim;

d.    a declaration that Medmarc has no duty under the 2020-2021 Policy to defend Watson or Adams | Coogler in connection with the Legal Malpractice Claim;

1061138\315350171.v1

e.    a declaration that Medmarc has no duty under the 2019-2020 Policy to indemnify Watson or Adams | Coogler in connection with the Legal Malpractice Claim;

f.    a declaration that Medmarc has no duty under the 2020-2021 Policy to indemnify Watson or Adams | Coogler in connection with the Legal Malpractice Claim;

g.    a declaration that Medmarc has no duty under the 2019-2020 Policy to pay any person or entity, including IRMH, for sums which Watson or Adams | Coogler may be obligated to pay such person or entity as a result of the Legal Malpractice Claim;

h.    a declaration that Medmarc has no duty under the 2020-2021 Policy to pay any person or entity, including IRMH, for sums which Watson or Adams | Coogler may be obligated to pay such person or entity as a result of the Legal Malpractice Claim;

i.    an award of attorneys' fees, costs, or other expenses incurred in this lawsuit; and

j.    any other and further just and appropriate relief.

1061138\315350171.v1

Respectfully Submitted,

**HINSHAW & CULBERTSON LLP**

s/ *Rory Eric Jurman*

Rory Eric Jurman
Florida Bar No.: 194646
rjurman@hinshawlaw.com

**HINSHAW & CULBERTSON**

201 East Las Olas Boulevard
Suite 1450
Ft. Lauderdale, FL 33301
Telephone: 954-467-7900
Facsimile: 954-467-1024
Primary: rjurman@hinshawlaw.com
*Attorneys    for    Medmarc    Casualty*
*Insurance Company*

JS 44 (Rev. 04/21) FLSD Revised 12/03/2023

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)* **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

### I. (a) PLAINTIFFS
MEDMARC CASUALTY INSURANCE COMPANY

### DEFENDANTS
ROY WATSON, ESQ., ADAMS COOGLER, P.A. and INDIAN RIVER MEMORIAL HOSPITAL, INC. d/b/a CLEVELAND CLINIC INDIAN RIVER HOSPITAL

**(b)** County of Residence of First Listed Plaintiff **Fairfax County, VA**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant **Palm Beach County, FL**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Rory Eric Jurman, Esq., HINSHAW & CULBERTSON, 201 E. LAS OLAS BLVD., SUITE 1450, FT. LAUDERDALE, FL 33301
(954) 375-1141

Attorneys *(If Known)*

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☒ INDIAN RIVER ☐ OKEECHOBEE ☐ HIGHLANDS

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question *(U.S. Government Not a Party)*
☐ 2 U.S. Government Defendant
☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | **PERSONAL INJURY** ☐ 365 Personal Injury - Product Liability | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | | | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 460 Deportation |
| (Excl. Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | **LABOR** | ☐ 485 Telephone Consumer Protection Act (TCPA) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Acts | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 751 Family and Medical Leave Act | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 791 Employee Retirement Income Security Act | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | **SOCIAL SECURITY** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 861 HIA (1395ff) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 862 Black Lung (923) | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 863 DIWC/DIWW (405(g)) | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 864 SSID Title XVI | |
| | | ☐ 550 Civil Rights | ☐ 865 RSI (405(g)) | |
| | | ☐ 555 Prison Condition | **FEDERAL TAX SUITS** | |
| | | ☐ 560 Civil Detainee – Conditions of Confinement | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| | **IMMIGRATION** | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | ☐ 462 Naturalization Application | | | |
| | ☐ 465 Other Immigration Actions | | | |

### V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed *(See VI below)*
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district *(specify)*
☐ 6 Multidistrict Litigation Transfer
☐ 7 Appeal to District Judge from Magistrate Judgment
☐ 8 Multidistrict Litigation – Direct File
☐ 9 Remanded from Appellate Court

### VI. RELATED/ RE-FILED CASE(S)
*(See instructions)*: a) Re-filed Case ☐YES ☒NO b) Related Cases ☐YES ☒NO

JUDGE: _____ DOCKET NUMBER: _____

### VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity)*:
Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201-02 regarding rights, duties, or obligations, or lack thereof, under certain insurance policies.

LENGTH OF TRIAL via 3-5 days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
DATE 11/16/2023
SIGNATURE OF ATTORNEY OF RECORD *Rory Eric Jurman*

FOR OFFICE USE ONLY : RECEIPT # _____ AMOUNT _____ IFP _____ JUDGE _____ MAG JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.**      (a) **Plaintiffs-Defendants**.  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence**.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys**.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

 **II.**     **Jurisdiction**.  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked. Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

**III.**    **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**    **Nature of Suit**.  Nature of Suit. Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**     **Origin**.  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Refiled (3) Attach copy of Order for Dismissal of Previous case. Also complete VI.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

Remanded from Appellate Court. (8) Check this box if remanded from Appellate Court.

**VI.**    **Related/Refiled Cases**.  This section of the JS 44 is used to reference related pending cases or re-filed cases. Insert the docket numbers and the corresponding judges name for such cases.

**VII.**   **Cause of Action**.  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity**. Example: U.S. Civil Statute: 47 USC 553
                       Brief Description: Unauthorized reception of cable service

**VIII.**  **Requested in Complaint**.  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.